REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0364

September Term, 2015

CHARNE SPENCER

v.

ESTATE OF LEONIDAS G. NEWTON, *et al.*

Graeff,
Leahy,
Wilner, Alan M.
   (Retired, Specially Assigned),

JJ.

Opinion by Wilner, J.

Filed: February 25, 2016

The sole issue before us in this appeal is whether the Circuit Court for Baltimore City abused its discretion in dismissing appellant's complaint pursuant to Md. Rule 2-507(c) for lack of prosecution. We shall conclude that it did not and therefore shall affirm the judgment of dismissal.

With exceptions not relevant here, Rule 2-507 permits the court to dismiss a civil action (1) under section (b) of the Rule for lack of jurisdiction over a defendant when the defendant has not been served or the court has not otherwise acquired jurisdiction over the defendant at the expiration of 120 days from the issuance of original process directed at that defendant, and (2) under section (c) of the Rule for lack of prosecution at the expiration of one year from the last docket entry. In this case, although there was a two-year delay in serving the appellee, the action was dismissed under section (c) of the Rule for inactivity extending more than a year since the last docket entry.

BACKGROUND

On July 17, 2012, appellant filed a 10-count complaint against five defendants. The gravamen of the complaint, as to each defendant, was that, during the period 1991 through 1996, appellant suffered from the ingestion of paint and dust containing lead while residing in a property owned by that defendant. One of the defendants was "Leonidas G. Newton and/or the Estate of Leonidas G. Newton." In fact, Mr. Newton had died in November 2009, and on December 17, 2009, his son, Leonidas A. Newton, and an attorney, Donald P. Mazor, Esq. (who is the Estate's attorney in this appeal) were

1

appointed co-personal representatives by the Register of Wills for Baltimore City. For convenience, we shall refer to the decedent and the Estate collectively as Newton.

There were acknowledged problems in obtaining proper service of the complaint on two of the other defendants – Donna Williams and Shaul Kazin. Service on Williams was effected in November 2012, and the action against Kazin was dismissed in August 2013. Unrealized by appellant at the time, there also was a problem regarding service on Leonidas and/or his Estate. Leonidas, as noted, had died more than two years before the complaint was filed. The private process server employed by appellant reported that she had effected service on Newton by leaving a copy of the complaint and summons with Spring Ferguson, who the process server averred was authorized to accept service and who acknowledged that she was a resident of the property where the papers were left. Although it was ultimately determined that Ms. Ferguson did not reside at the property and was not authorized to accept service, appellant apparently assumed that service had properly been made and that the case therefore could proceed.

Nonetheless, there was no further activity in the case – no docket entries – until November 3, 2014, when, pursuant to Rule 2-507(d), the clerk of the court sent a notice that the action would be dismissed for lack of prosecution 30 days after the date of the notice unless, prior to then, a motion showing good cause to defer the entry of an order of dismissal was filed. The notice of potential dismissal produced three responses from appellant, all filed on November 13, 2014 – a motion for an order of default against Williams for failure to file a timely answer to the complaint, a similar motion directed

2

against Newton, and a motion to suspend Rule 2-507. The motion for order of default against Newton alleged that service had been effected on Leonidas G. Newton or the Estate of Leonidas G. Newton on September 17, 2012 by leaving the summons and complaint with Spring Ferguson, who was authorized to accept service.

The motion to suspend the Rule, which technically should have been a motion to defer entry of an order of dismissal under section (e) of the Rule, averred that the four remaining defendants had been served and that appellant was prepared to proceed. He attributed the delay to a mix-up in serving Williams but stated that that problem had been resolved. A fair reading of that response indicates that appellant understood that the notice was based on inactivity under section (c) of the Rule, rather than a delay in service or lack of jurisdiction over any of the four remaining defendants.

Newton responded with a motion to dismiss on the ground that Ms. Ferguson was not a resident of the place where service was allegedly effected and that she was not authorized to accept service. The motion was supported by an affidavit from Mr. Mazor that Leonidas G. Newton had died in 2009, that the parties to be served were the co-personal representatives, that no service had ever been effected on them, and that dismissal was appropriate under Rule 2-507(b) for lack of jurisdiction.

The court, through Judge DiPietro, denied the motions for order of default because of technical deficiencies in the motions themselves. Newton's motion to dismiss was referred to Judge Fletcher-Hill who, on February 6, 2015, signed an order (1) dismissing the action against Leonidas G. Newton because he was dead, (2) quashing the alleged

3

service on the Estate, (3) giving appellant 60 days to effect service on a personal representative of the Estate, and (4) in light of that extension, denying the motion to dismiss without prejudice. Unfortunately, that order was not filed with the clerk until February 19, 2015 and apparently was not docketed until February 20.

The motion to defer dismissal under Rule 2-507 was referred to Judge Pierson, the administrative judge, who conducted a hearing on it on the morning of February 19, 2015. The Estate had not yet been served and, as noted, Judge Fletcher-Hill's order extending the time for service had not yet been docketed. It is not clear whether, at the time of the hearing, that order had yet been filed, although Judge Pierson was aware that a hearing had been held by Judge Fletcher-Hill. Counsel for appellant argued that he was making every effort to resolve the "service issues" and asked for a deferral.

Judge Pierson noted that the service issues (except for non-service on the Estate) had been resolved by August 2013 and that there had been no activity since then, until the notice of dismissal was sent by the clerk. He observed that no justification had been offered for the delay and that, to warrant a deferral, "[t]here has to be some fact, even a scintilla of a fact that would justify the delay." There being none, he concluded that there was no good cause to defer dismissal, and he therefore dismissed the action. The tenor of his remarks indicates that Judge Pierson also viewed the problem as inactivity under section (c) of the Rule, for lack of prosecution, rather than under section (b) for lack of service.

4

Later that afternoon, service was effected on Mr. Mazor, as co-personal representative of the Estate. A week later, appellant moved for reconsideration of the dismissal. He called attention to Judge Fletcher-Hill's order and to the fact that service had been made within the time allowed by that order. Although acknowledging the long period of inactivity, he asserted that he was then ready, willing, and able to proceed and that the defendants had suffered no prejudice from the delay. He contended that the purpose of Rule 2-507 was to remove cases that no one desired to litigate, but that this was not one of them. The Estate responded that there was, in fact, no justification for the inactivity and that the Estate had been prejudiced by the delay. In that regard, the personal representative pointed out that the Estate was close to being wound up and to keep the case alive would delay the closing and result in additional expense.

On April 17, 2015, Judge Pierson denied the motion. He made no specific finding as to prejudice to the Estate (or any other defendant) but dismissed the relevance of Judge Fletcher-Hill's order because it dealt with a different issue and had not been filed until after the case had already been dismissed. This appeal ensued.

## DISCUSSION

Although there have been scores of cases interpreting and implementing Rule 2-507(c) and its predecessor Rule 530, the essential principles governing the ultimate decision to be made by the court can be gleaned from *Powell v. Gutierrez*, 310 Md. 302 (1987), the case that established the appropriate guidelines. *Powell* made clear that the purpose of the Rule was to "prune[] the docket of dead cases" – cases in which "neither

5

party demonstrates an interest in having the issue resolved." *Powell*, 310 Md. at 308. It was not, the Court pointed out, "to penalize plaintiffs for having lax attorneys." *Id.* The Court gave some examples of the kinds of situations that the Rule was designed to deal with but did not purport to limit application of the Rule to just those situations.

Although a case is subject to dismissal under the Rule for lack of prosecution for one year from the last docket entry, the *Powell* Court made clear that lack of prosecution alone does not require automatic dismissal. The test under the Rule is whether there is "good cause" to defer dismissal and, in applying that test, there are several factors that a court must consider, weigh, and balance. Two factors pertain to the status and conduct of the plaintiff: (1) is the plaintiff currently ready, willing, able, and desirous of proceeding with prosecution of the case, and (2) was there any justification for the delay?

From the defendant's perspective, the court must consider whether the defendant "has suffered serious prejudice because of the delay, so as to impede substantially his [her, or its] ability to defend the suit." *Id*. at 308. Where appropriate, the court must take into account that the defendant also has a responsibility "to promote the orderly resolution of litigation" and may not "sit back and allow the prescribed period under the Rule to pass in the hope that the court will dismiss the case irrespective of the vitality of the litigation." *Id.* at 309. Thus, where the defendant claims prejudice because of the plaintiff's delay, "the trial court must include as a consideration in the weighing process the efforts made by the defendant to secure a resolution of the case." *Id*. at 308-09. *See also Younker v. Schmid Products Co.*, 310 Md. 493, 495 (1987).

6

In the end, although the court must consider, weigh, and balance these factors, the ultimate decision whether to defer dismissal is within the trial court's discretion, and the appellate court must give deference to the exercise of that discretion. *Powell*, at 309; *Stanford v. District Title Insur.*, 260 Md. 550, 555 (1971), construing the predecessor Rule 530 (the decision "rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse").

We find no abuse in the court's exercise of its discretion in this case. Although, as it turned out, there was a significant delay in effecting service on Newton, appellant was not remiss in relying on the affidavit of its private process server and assuming that Newton had been properly served back in 2012. That does not work to his benefit, however, at least under §(c) of the Rule. Appellant believed as early as 2012 that all defendants, except the one dismissed, had been properly served and yet did nothing for two years to move the case – even, so far as the record reveals, to commence discovery. In the meanwhile, administration of the Estate proceeded to the point that the Estate was nearing closure. There was nothing that the Estate could have done to move the case, because, from its perspective, it had not been served and therefore was not a party.

What Judge Pierson had before him was a delay wholly attributable to appellant that simply was inexcusable – without any justification. In his brief, appellant notes that, in lead paint cases, there are situations in which some delay may be justified – locating landlords who owned houses that the plaintiff lived in years ago, delays in serving those landlords, determining insurance coverage – but none of those factors were asserted,

7

much less proved to exist, in this case. The unjustified delay here was not one year, but two, and the fact of prejudice to Newton was presented to Judge Pierson. To start the litigation now – to conduct the necessary investigation, to complete discovery and commence motion practice – could keep the Estate open for years, which the law does not favor, and force all four defendants to begin searching records from 1991-96. Where there has been an inexcusable delay for more than a year and resulting prejudice to the defendant, the plaintiff's newfound desire, readiness, and ability to proceed does not require the court to defer dismissal.

JUDGMENT AFFIRMED;
APPELLANT TO PAY THE COSTS.